UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



FIORE P. TALARICO, JR., WILHELMINA E. ROBERTSON,
CHESTNUT OAK, LTD., COCKSPUR, INC., DONALD R.
BOTIK, MIRACLE OF PENTECOST FOUNDATION, and
DAVID KLEIN,

Plaintiffs,

v.

RICHARD E. CAVANAGH, KAREN P. ROBARDS, G.
NICHOLAS BECKWITH III, KENT DIXON, FRANK J.
FABOZZI, KATHLEEN F. FELDSTEIN, JAMES T. FLYNN,
JERROLD B. HARRIS, R. GLENN HUBBARD, W. CARL
KESTER, ROBERT S. SALOMON, JR., RICHARD S. DAVIS,
and HENRY GABBAY, as Trustees,

Defendants,

- and -

BLACKROCK MUNIENHANCED FUND, INC.; BLACKROCK
MUNIVEST FUND, INC.; BLACKROCK MUNIVEST FUND II,
INC.; BLACKROCK MUNIYIELD CALIFORNIA FUND, INC.;
BLACKROCK MUNIYIELD FUND, INC.; BLACKROCK
MUNIYIELD INSURED FUND, INC.; BLACKROCK
MUNIYIELD NEW YORK INSURED FUND, INC.;
BLACKROCK PREFERRED AND EQUITY ADVANTAGE
TRUST, INC.; AND BLACKROCK PREFERRED
OPPORTUNITY TRUST, INC.,

Necessary Party Defendants.

09 CIV. 0753

Civil Action No.

**COMPLAINT**

JUDGE BAER

{2253 / CMP / 00093690.DOC v2}

1.    Plaintiffs, by their undersigned attorneys, allege the following upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters based on the investigation made by and through their attorneys, which investigation included, among other things, a review of public documents and news releases, press releases and certain public filings made with the United States Securities and Exchange Commission (the "SEC").

### Jurisdiction and Venue

2.    This Court has jurisdiction under 28 U.S.C. § 1332(a) because Plaintiffs are citizens of Texas; none of the Defendants are citizens of Texas; and the matter in controversy exceeds $75,000 for each Plaintiff.

3.    This Court has personal jurisdiction over all defendants because all defendants have maintained minimum contacts with this jurisdiction:

    a.  All Defendants have transacted business in New York related to Plaintiffs' claims;

    b.  Defendants Richard E. Cavanagh, Karen P. Robards, R. Glenn Hubbard and Henry Gabbay are New York domiciliaries;

    c.  Necessary Party Defendant Funds, identified hereinafter, hold their Annual Meeting of Shareholders in this District; and

    d.  The Necessary Party Defendant Funds request individuals, including Plaintiffs, and institutions to direct any correspondence to Defendants at an address in this District.

4.    Venue is proper in this District under 28 U.S.C. § 1391 because the Necessary Party Defendant Funds have their principal executive office, advertise and do business in this District.

### The Parties

### Plaintiffs

5.    Plaintiff Fiore P. Talarico owns Auction Rate Preferred Stock ("ARPS") issued by the following BlackRock closed-end funds in the following amounts: BlackRock MuniVest Fund

(par value of ARPS owned is $1,725,000); BlackRock MuniVest Fund II (par value of ARPS owned is $250,000); BlackRock MuniYield Fund (par value of ARPS owned is $2,100,000); BlackRock MuniEnhanced Fund (par value of ARPS owned is $650,000).

6.    Plaintiff Wilhelmina Robertson owns ARPS issued by BlackRock MuniYield Fund (par value owned is $1,575,000).

7.    Plaintiff Chestnut Oak, Ltd., a Texas partnership, owns ARPS issued by BlackRock MuniVest Fund II (par value owned is $875,000).

8.    Plaintiff Cockspur, Inc., a Texas corporation, owns ARPS issued by BlackRock MuniYield Fund (par value of ARPS owned is $600,000), BlackRock MuniYield Insured Fund, Series B (par value of ARPS owned is $500,000), BlackRock MuniYield Insured Fund, Series C (par value of ARPS owned is $250,000), and BlackRock MuniYield California Fund (par value of ARPS owned is $150,000).

9.    Plaintiff David Klein owns ARPS issued by the following BlackRock funds in the following amounts: BlackRock MuniYield Fund (par value of ARPS owned is $3,975,000); BlackRock MuniEnhanced Fund (par value of ARPS owned is $2,675,000); BlackRock MuniYield New York Insured Fund (par value of ARPS owned is $75,000).

10.    Plaintiff Donald R. Botik owns ARPS issued by BlackRock MuniYield Fund (par value owned is $900,000).

11.    Plaintiff Miracle of Pentecost Foundation owns ARPS issued by BlackRock Preferred and Equity Advantage Trust (par value owned is $200,000)  and BlackRock Preferred Opportunity Trust (par value owned is $50,000).

12.    Plaintiffs purchased their BlackRock ARPS prior to February 18, 2008. The combined par value of the BlackRock ARPS held by Plaintiffs is $16,550,000.

2

## The Defendants

13.     Defendants Richard E. Cavanagh (resides in Bronxville, New York), Karen P. Robards (resides in Plainsboro, New Jersey), G. Nicholas Beckwith III (resides in Pittsburgh, Pennsylvania), Kent Dixon (resides in St. Petersburg, Florida), Frank J. Fabozzi (resides in New Milford, Connecticut), Kathleen F. Feldstein (resides in Belmont, Massachusetts), James T. Flynn (resides in New York, New York), Jerrold B. Harris (resides in Church Creek, Maryland), R. Glenn Hubbard (resides in New York, New York), W. Carl Kester (resides in Concord, Massachusetts), Robert S. Salomon, Jr. (resides in Stamford, Connecticut), Richard S. Davis (resides in Boston, Massachusetts), and Henry Gabbay (resides in Sands Point, New York) are trustees or directors of all of the Necessary Party Defendant Funds listed below.

## The Necessary Party Defendant Funds

14.     BlackRock MuniEnhanced Fund, Inc. is a closed-end investment company operating as a Maryland Corporation which invests in tax-exempt securities and currently has net assets of approximately $271.2 million and $158.85 million (6,354 shares) in unredeemed ARPS outstanding.

15.     BlackRock MuniVest Fund, Inc.is a closed-end investment company operating as a Maryland Corporation which invests in tax-exempt securities and currently has net assets of approximately $500.6 million and $275.7 million (11,028 shares) in unredeemed ARPS outstanding.

16.     BlackRock MuniVest Fund II, Inc. is a closed-end investment company operating as a Maryland Corporation which invests in tax-exempt securities and currently has net assets of approximately $248.2 million and $150.8 million (6,032 shares) in unredeemed ARPS outstanding.

17.     BlackRock MuniYield Fund, Inc. is a closed-end investment company operating as a

3

Maryland Corporation which invests in tax-exempt securities and currently has net assets of approximately $536.0 million and $271.5 million (10,860 shares) in unredeemed ARPS outstanding.

18.    BlackRock MuniYield Insured Fund, Inc. is a closed-end investment company operating as a Maryland Corporation which invests in tax-exempt securities and currently has net assets of approximately $758.1 million and $395.775 million (15,831 shares) in unredeemed ARPS outstanding.

19.    BlackRock MuniYield New York Insured Fund, Inc. is a closed-end investment company operating as a Maryland Corporation which invests in tax-exempt securities and currently has net assets of approximately $472.7 million and $267.525 million (10,701 shares) in unredeemed ARPS outstanding.

20.    BlackRock California Municipal Income Trust II is a closed-end investment company operating as a Delaware Statutory Trust which invests in tax-exempt securities and currently has net assets of approximately $100.5 million and $59.75 million (2,390 shares) in unredeemed ARPS outstanding.

21.    BlackRock Preferred and Equity Advantage Trust is a closed-end investment company operating as a Delaware Statutory Trust which invests in taxable securities and currently has net assets of approximately $1,081.3 million and $231 million (9,240 shares) in unredeemed ARPS outstanding.

22.    BlackRock Preferred Opportunity Trust is a closed-end investment company operating as a Delaware Statutory Trust which invests in taxable securities and currently has net assets of approximately $416.1 million and $110.4 million (4,416 shares) in unredeemed ARPS outstanding.

4

23.     The above-named Funds are joined as necessary party defendants, pursuant to Fed. R. Civ. P. Rule 19(a), in order to afford the plaintiffs complete relief.

### Summary of the Claim

24.     Plaintiffs are individual investors who are unable to sell or redeem their holdings in Auction Rate Preferred Stock ("ARPS"), issued by the above-listed Necessary Party Defendant Funds ("Funds"), for reasons described below.

25.     Defendants, as trustees or directors of the Funds that issued the ARPS, owe fiduciary duties to Plaintiffs to redeem Plaintiffs' ARPS at par value promptly, because the market mechanism, established by the Funds in order to provide liquidity for holders of the ARPS, ceased functioning on February 12, 2008.

26.     Plaintiffs have been stuck since then holding low-interest-paying preferred stock with no way to cash out their ARPS holdings at par. Plaintiffs continue to suffer enormous economic damages because of the Defendants' continued refusal to redeem Plaintiffs' ARPS.

27.     By refusing to redeem Plaintiffs' ARPS although demanded to do so, the Defendants are favoring the Funds' common stockholders over Plaintiffs. The common stockholders benefit because they receive enhanced returns generated from the investment leverage provided by the ARPS holders, including Plaintiffs. However, Plaintiffs no longer receive the benefit of owning their ARPS, *i.e.*, their auction rate returns and liquidity. Instead, Plaintiffs receive substantially less than market rates for the leverage they provide and cannot sell their ARPS at par.

28.     The Defendants, in their capacity as trustees and directors, owe fiduciary duties under applicable law to redeem Plaintiffs' ARPS promptly, because otherwise, the Funds have offered no opportunity for the redemption of Plaintiffs' ARPS, and Plaintiffs cannot sell their ARPS, except at fire sale prices, and thereby suffer enormous losses. Other closed-end funds' trustees have fulfilled their fiduciary duties by redeeming all or substantial portions of their funds'

5

outstanding ARPS.

29.     The Defendants have made affirmative decisions to place the best interests of the common stockholders of the Funds above those of the ARPS holders. In so doing, and in refusing to appropriately balance the competing interests of those two groups, the Defendants have breached their fiduciary duties to the Plaintiffs as preferred stockholders of the Funds. By leaving Plaintiffs stranded and without the ability to liquidate their investments, Defendants are providing the common stockholders with additional leverage, which the common stockholders are receiving at a below-market rate. Moreover, Defendants have compounded their breaches by their continued refusals to fully redeem or refinance all the ARPS held by Plaintiffs, despite the fact that the Defendants understand the illiquid nature of the ARPS market and the fact that the Defendants were previously made aware of these inequities.

30.     ARPS, including the ARPS held by Plaintiffs, were not designed or marketed as risky investments, where the purchaser's objective is to profit from a rise in price. They were designed to be market-neutral, like cash. For approximately 20 years, the auction market for ARPS traded successfully at auction with few exceptions. This long history of successful auctions, coupled with no history of any significant auction failures, reinforced the liquid nature of ARPS.

### The ARPS Market

31.     The ARPS at issue in this action are preferred stock issued by closed-end investment companies such as the Funds. The interest rates for these ARPS were re-set at predetermined periodic intervals by means of an auction process conducted by an auction agent paid directly by the Funds. The ARPS at issue in this litigation have a par value of $25,000 per share.

32.     ARPS were first developed in 1984, and, as of February 12, 2008, closed-end investment companies had approximately $64 billion in ARPS outstanding. The BlackRock family of

closed-end funds had issued approximately $9.8 billion in outstanding ARPS as of February 12, 2008.

33.     Historically, the ARPS market was utilized primarily by institutional investors. However, the minimum investment for participation in ARPS was reduced from $250,000 to $25,000, placing ARPS within the reach of a broader array of investors. One closed-end fund issuer believes 90% of its ARPS were held by retail investors.

34.     ARPS were conceived to create a funding instrument that behaved like a long-term bond for the issuer, but resembled a short-term security, such as commercial paper, for the investor. Specifically, ARPS are long-term securities, but with interest rates that are meant to reset at fixed intervals through the auction process. These interest rate resets were typically done at intervals of one, four, five, or seven weeks, although other reset intervals are possible. As designed, the periodic auctions were designed to provide a high degree of liquidity comparable to other very short-term asset classes such as treasuries or cash, with a slightly higher yield.

35.     The ARPS auction process was a modified Dutch auction. In the modified Dutch auction for ARPS, broker-dealers for potential purchasers submitted bids to an auction agent designated and paid by the issuer of the ARPS. In the bid, potential purchasers specified to the designated broker-dealer the number of shares they would like to purchase and the lowest interest rate they would be willing to accept for purchasing the preferred stock at par. The bids were collected by the designated broker-dealer and then submitted to an auction agent. The auction agent then assembled the bids and determined the lowest interest rate that would successfully "clear" the auction, by satisfying the supply of available preferred shares (*i.e.*, the number of preferred shares that existing holders want to sell). Holders of ARPS had three options at auction: (a) Hold at Market, which means the holder retained its ARPS regardless of the new interest rate; (b) Hold at Rate, which means the holder retained its ARPS at a specific minimum rate; and (c) Sell,

7

which is to sell regardless of the new rate. Buyers bid to buy a new position at a specified minimum rate.

36.    An auction "fails" in the event that there were not enough bids to purchase the available supply of ARPS at a rate less than or equal to the maximum rate set by the issuer. In that event, all existing holders continued to hold the ARPS until the next auction.

37.    The auction mechanism, when it functioned, provided liquidity despite the long-term nature of the underlying securities. Until February, 2008, ARPS holders were able to dispose of their ARPS at any of the regularly scheduled auctions.

38.    For approximately twenty years, the closed-end fund ARPS auction market, which was only a small percentage of the overall Auction Rate Securities market, traded successfully at auctions with very few exceptions. The auction market provided readily available liquidity for ARPS stockholders over these twenty years. Holders of ARPS, including Plaintiffs, reasonably relied on the long history of liquidity in the market when purchasing these ARPS and reasonably believed they were safe short-term liquid investments that were equivalent to cash.

39.    The ARPS were not designed or marketed as risky investments, where the purchaser's objective is to profit from a rise in price. They were designed to be market-neutral and liquid, like cash. In fact, over the last twenty years, auction failures were rare occurrences, a fact which created and maintained a reasonable belief among innocent purchasers that there was a highly liquid market for these securities. Indeed, there had been only a handful of failed ARPS auctions that prevented investors from accessing their principal; from 1984 until the end of August 2007, there were only 44 failed auctions—an average of less than two (2) per year.

40.    On or about February 12, 2008, the entire auction rate securities market, including the ARPS market, failed almost simultaneously. The auction agents, paid directly by the closed-end funds, including the Funds, that had usually stepped in to prop up poorly bid auctions by buying

{2253 / CMP / 00093690.DOC v2}

the un-bid for shares, decided not to participate and allowed the auctions to fail. The sudden realization that ARPS were not completely liquid led to an avalanche of sell orders and virtually no buy orders. Confidence in the auction process evaporated and is unlikely ever to return.

41.     Since the ARPS auctions failed, the interest rate on Plaintiffs' ARPS has been set automatically based on a set reference standard. The Funds' marketing materials described this automatic reset rate following an auction failure as the "Maximum Rate."

42.     The Defendants caused the ARPS to be issued for the purpose of providing leverage to boost the yield to the common shares. The strategy is based on the fact that the Funds paid a lower rate of interest to the ARPS holders than the yield the Funds' common stockholders received from investing in long-term holdings. Historically, short-term interest rates have been lower than long-term rates. Until the failure of the auction process, ARPS were effectively short-term investments with a corresponding yield. Following the auction failure, they are now completely illiquid long-term securities yielding below-market short-term rates.

43.     Historically, the yield on Plaintiffs' ARPS has been only slightly less than the yield on the common shares issued by the Funds. However, since the auction failures in February, 2008, the Funds' common shares' yield has increased while the ARPS' yield has decreased, as the following chart illustrates:

| Fund[1] | Common Shares Distribution Rate 6/29/07 | ARPS Rate 6/29/07 | Common Shares Distribution Rate 2/1/08 | ARPS Rate 2/1/08 | Common Shares Distribution Rate 12/22/09 | ARPS Rate December 2008 |
|---|---|---|---|---|---|---|
| MEN | 4.91 | 3.90 | 4.83 | 3.14 | 7.25 | 1.10 |
| MVF | 5.48 | 3.68 | 5.33 | 3.20 | 7.50 | 1.30 |
| MVT | 5.70 | 3.75 | 5.70 | 3.32 | 9.31 | 1.37 |
| MYD | 5.47 | 3.68 | 5.70 | 3.10 | 8.18 | 1.31 |
| MYI | 4.91 | 3.88 | 4.99 | 3.25 | 7.91 | 1.17 |
| MYN | 5.02 | 3.45 | 4.99 | 2.95 | 7.55 | 1.10 |
| MYC | 4.74 | 3.80 | 4.79 | 3.36 | 7.63 | 1.75 |

44.     As a result of the failure of the auction rate market, Plaintiffs have been stuck holding ARPS and are facing indefinite illiquidity, with no way to sell their ARPS at par and stuck receiving below market interest for holding what has now become essentially a long-term instrument.

45.     Other closed-end fund issuers recognize the impact the failure of the auction market has had on the owners of their ARPS and have actively worked to redeem their ARPS at par.

46.     Eaton Vance Corp. ("Eaton Vance"), another company engaged in the creation, marketing and management of closed-end investment funds, with approximately $123 billion in assets under management, and issuer of more than $5 billion in closed-end fund ARPS, told the SEC on July 2, 2008 that the lack of liquidity caused by the failure of the ARPS auction market was devastating to ARPS investors:

> As the auction process is no longer functioning and no established
> secondary market exists that would provide APS [ARPS]
> stockholders with the liquidation preference of $25,000 per share,
> there is currently no reliable mechanism for holders of APS
> [ARPS] Shares, including the Applicants' APS stockholders, to
> obtain liquidity. The Applicants believe that, industry-wide, the
> current lack of liquidity is causing distress for a substantial number

---

[1] The Funds have been identified by their ticker symbol. The ticker symbols represent the following Funds: BlackRock MuniEnhanced Fund, Inc. (MEN); BlackRock MuniVest Fund, Inc. (MVF); BlackRock MuniVest Fund II, Inc. (MVT); BlackRock MuniYield Fund, Inc. (MYD); BlackRock MuniYield Insured Fund, Inc. (MYI); BlackRock MuniYield New York Insured Fund, Inc. (MYN); and BlackRock MuniYield California Fund, Inc. (MYC).

of APS [ARPS] stockholders, creating severe hardship for many investors.

Eaton Vance Amended and Restated Application for an Order Pursuant to Section 6(c) of the Investment Company Act of 1940 for an Exemption from the Provisions of Section 18(a)(1)(A) dated July 2, 2008.

47.     Other issuers of closed-end fund ARPS recognize their obligations to redeem the failed ARPS. Eaton Vance has redeemed at least 76% ($3.8 billion) of its $5 billion in issued ARPS that experienced auction failures. Eaton Vance has also taken steps to redeem its remaining outstanding ARPS through the development of a new type of security called a Liquidity Protected Preferred share ("LPP"). Eaton Vance's LPPs have received SEC approval and would allow holders of Eaton Vance ARPS to sell their ARPS at par value. The Eaton Vance LPPs provide a cost-effective new form of leverage for its closed-end funds that will facilitate redeeming the balance of Eaton Vance's outstanding ARPS.

48.     Eaton Vance has taken additional steps beyond creating a replacement security for ARPS in order to redeem 100% of its outstanding ARPS. In the summer of 2008, Eaton Vance applied to the SEC for an order exempting certain of its funds from Section 18(a)(1)(A) and (B) of the Investment Company Act. The exemption would allow five Eaton Vance closed-end funds to issue debt securities subject to asset coverage of 200%, compared to the usual 300% in required asset coverage. The purpose of the exemption, granted by the SEC on October 23, 2008, is to allow Eaton Vance to issue debt to refinance all of its issued and outstanding ARPS at par while it works to develop the market for LPPs. Two other issuers of closed-end funds with outstanding ARPS, Nuveen Investments (approximately $9 billion in currently outstanding ARPS) and Calamos Advisors LLC (approximately $430 million in currently outstanding ARPS) have also sought this exemption.

49.     In its application, Eaton Vance recognized that the trustees of its closed-end funds that had issued ARPS had an obligation and fiduciary duty to provide liquidity to all its ARPS holders because

> [I]t is obligated to manage the fund with regard to the interests of the holders of both the common shares and the APS [ARPS] shares. In light of persistent auction failures, since February 2008, Eaton Vance has been collaborating with other market participants to attempt to develop solutions for restoring liquidity to holders of APS [ARPS] shares and to provide alternative sources of leverage to its closed-end funds. . . . In considering any incurrence of debt to replace the APS [ARPS] shares, the members of each Applicant's Board owe fiduciary duties to the holders of both the common shares and the APS [ARPS] shares and will weigh carefully the benefits and costs of the proposals to the common shareholders and the APS [ARPS] shareholders.

50.     Defendants also have acknowledged that they owe fiduciary duties to both the preferred and common stockholders of the Funds: "Closed-end fund boards of directors/trustees have a fiduciary duty to all of the stockholders – both preferred and common – of the funds they represent." BlackRock Closed-End Fund Auction Rate Preferred Shares Update, September 30, 2008.

## Claim for Relief

### (Breach of Fiduciary Duties)

51.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

52.     Defendants owe fiduciary duties to Plaintiffs to govern the Funds fairly and in the best interests of common stockholders and ARPS holders alike, under the laws of the states in which each of the Funds was incorporated.

53.     By agreeing to act as trustees or directors of the Funds, Defendants accepted responsibility for doing their best to maintain a liquid market for Plaintiffs' ARPS.

54.     Defendants have violated their fiduciary duties to Plaintiffs by failing to act in good faith to resolve the ARPS' lack of liquidity.

55.     By allowing Plaintiffs' investments to remain illiquid and of substantially diminished value, the Defendants are providing the Funds' common stockholders with benefits at the expense of the Funds' preferred stockholders, in the form of additional leverage at below-market rates.

56.     Defendants have violated their fiduciary duties to Plaintiffs by favoring the interests of the common stockholders of the Funds over the interests of the ARPS holders of the Funds.

57.     Plaintiffs have duly demanded that the Funds redeem at par or refinance all the ARPS held by them.  Defendants have refused to direct the Funds to do so, despite their awareness that the auction market they had established to provide liquidity for Plaintiffs' ARPS has disappeared, and that Plaintiffs continue to suffer substantial damages.

58.     As a direct result of the Defendants' aforedescribed breach of their fiduciary duties, Plaintiffs have suffered and will continue to suffer substantial damages and financial losses.

59.     Plaintiffs have no adequate remedy at law.


**Prayer for Relief**

WHEREFORE, Plaintiffs pray for a judgment:

(a)     Declaring that the Defendants have breached fiduciary duties to Plaintiffs.

(b)     Ordering Defendants to redeem Plaintiffs' ARPS at par value;

(c)     Awarding Plaintiffs compensatory damages, including consequential damages, against the Defendants, in amounts to be shown at trial;

(d)     Awarding Plaintiffs their costs and expenses incurred in this action, including

their legal fees;

(e)    Granting such other and further relief as the Court may deem just and proper.


DATED:
White Plains, New York
January 26, 2009

Stephen Lowey (SL 7677)
Geoffrey M. Horn (GMH 4179)
LOWEY DANNENBERG COHEN
   & HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310
(914) 997-0500 (Telephone)
(914) 997-0035 (Facsimile)
slowey@lowey.com
ghorn@lowey.com

**ATTORNEY FOR PLAINTIFFS**

14